The State of Ohio, Appellee, *v.* Durham, Appellant.

(No. C-74614—Decided April 12, 1976.)

Mr. *William Flax,* for appellant.

Mr. *Simon L. Leis, Jr.,* prosecuting attorney, Mr. *William E. Breyer* and Mr. *Carl W. Vollman,* for appellee.

Miller, J. Defendant is appealing from a conviction and sentence for aggravated burglary and theft. The apartment of one Stanley Monnin was forcefully entered and personal property was removed therefrom. At trial, one Kathy McKewen, who rented and lived in an apartment across the hall from that of Mr. Monnin, testified that defendant and a Modena Larison spent the night in her apartment and during the following day defendant broke into the Monnin apartment and committed a theft.

Later in the day, two police officers observed defendant in an automobile, with Modena Larison, into which Kathy McKewen entered. When the officers approached the automobile, it was rapidly driven away striking both officers but not disabling them. A pursuit was made at high speeds resulting in traffic violations and collisions of the automobile with other vehicles.

When the automobile was taken to the police station, an inventory search was made revealing property of Monnin in the trunk of the car. Defendant was indicted on five counts, two of which were for knowingly attempting to cause physical harm to the officers, one for aggravated burglary, one for knowingly obtaining control over property with purpose to deprive the owner thereof, and the last for receiving or retaining stolen property. His trial resulted in an acquittal on the first two counts and a conviction on the last three.

Defendant appeals, setting forth eight assignments of error.

Assignment of error number one asserts: "The trial court erred in not granting defendant-appellant's motion to dismiss the indictment."

This assignment is based on a failure to timely bring defendant to trial. He was arrested on April 17, 1974, indicted June 14, 1974, arraigned June 16, 1974, and his trial took place on October 9, 10 and 11, 1974. He remained incarcerated from April 17, 1974, through October 11, 1974.

The record as supplemented indicates defendant was on May 6, 1974, and June 14, 1974, found guilty in other cases and remanded to jail pending pre-sentence reports and sentencing in each case.

R. C. 2945.71 provides, in pertinent part:

"(C) A person against whom a charge of felony is pending:

"(2) shall be brought to trial within two hundred seventy days after his arrest.

"(D) For purposes of computing time under division * * * (C) of this section, each day during which the accused is held in jail in lieu of bail *on the pending charge* shall be counted as three days." (Emphasis added.)

R. C 2945.73 requires that a charge of felony shall be dismissed if the accused is not brought to trial within the time provided in R. C. 2945.71 and 2945.72.

Defendant was held in jail from and after May 6, 1974, and June 14, 1974, on convictions in other cases for unspecified periods of time. His confinement during such periods is as equally chargeable and attributable to the

other offenses as to the pending charge. In the absence of an affirmative showing that he was held in lieu of bail only on the pending charge for a period in excess of ninety days, it cannot be said that he was denied a speedy trial within the purview of R. C. 2945.71. The first assignment of error is not well taken.

Assignment of error number two states: "The trial court erred in not granting a separate trial for the 1st and 2nd counts of the indictment."

Criminal Rule 8 provides: "Two or more offenses may be charged in the same indictment * * * in a separate count for each offense if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

Criminal Rule 14 provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts * * *."

Where an indictment charges two or more distinct offenses, even if improperly joined, the exercise of authority to compel the prosecutor to make an election rests in the sound discretion of the court, to be exercised in the promotion of justice and upon good cause shown, and it is the policy of reviewing courts to permit a rather wide range in this respect. Unless the discretion has been exercised to the manifest injury of the accused, there is no error. See 28 Ohio Jurisprudence 2d 486, Indictment and Information, Section 71. We find no abuse of discretion in the trial court's overruling of defendant's motion to sever the counts in the indictment.

Assignment of error 1A states: "The trial court erred in not ruling on defendant's motion to dismiss the indictment."

Assignment of error number 2A states: "The trial court erred in not even ruling on the motion to sever counts."

The record was supplemented by *nunc pro tunc* en-

tries overruling defendant's motion to dismiss and to sever counts.

Judgments are entered *nunc pro tunc* to make the record speak the truth and the function of an entry *nunc pro tunc* is the correction of the judicial records insofar as they fail to record a judgment rendered by the court. If there is a failure to record that which did happen, an entry *nunc pro tunc* is proper and fully authorized to correct such defects. Such an entry is the available remedy where a court has acted and its action has not been correctly recorded. See 32 Ohio Jurisprudence 2d 329 ff, Judgments, Section 122 *et seq.*

The trial court having entered its judgments by *nunc pro tunc* entries, assignments 1A and 2A are not well taken.

Assignment of error number three: "The trial court erred in not finding that Modena Larison was the defendant's wife, and in letting her testify."

This assignment is based upon the existence of a common-law marriage between defendant and Modena Larison.

In 35 Ohio Jurisprudence 2d 516, Marriage, Section 22, it is stated:

"The elements essential to the establishment of a common-law marriage have become well established by court decision. They are the following: (1) a mutual agreement to marry in praesenti, made by parties competent to marry; (2) accompanied and followed by cohabitation as husband and wife; (3) a holding of themselves out as husband and wife in the community in which they move; and (4) being regarded as husband and wife in the community in which they move."

Defendant's own testimony cast doubt on a present agreement to marry, as follows:

"Q. When did you decide that you were to be married?

"A. Well, we had discussed it on previous occasions many times, and I said, 'Let's wait.'

"And I had some cases pending at the time.

"I said, 'Let's wait until the outcome. I don't want

you to get married to me if I am going to be gone for years.' ''

Modena Larison testified that she never used the name of Durham.

Although it is not absolutely necessary to the existence of a common-law marriage that the wife adopt the husband's surname, it is the usual custom so to do, and the failure to do so reflects upon the holding out of the parties as husband and wife.

On the state of the evidence, this court cannot say that there was, as a matter of law, proof by sufficient evidence of a common-law marriage which rendered Modena Larison incompetent to testify against defendant.

Assignment of error number four states: ''The trial court erred in allowing plaintiff-appellee to impeach its own witness.''

In answer to a question put to Modena Larison, relative to the operation of the automobile, she testified she did not know. The prosecutor then asked her if she recalled testifying before the grand jury and read a question asked her and the answer thereto relative to the operation of the automobile.

The recollection of a witness may be refreshed by directing his attention to a former conversation or declaration so as to cause him to correct his testimony. The trial court may permit a prosecutor to refresh the recollection of a witness by asking whether he had previously made statements contrary to his present testimony, where it is apparent from answers previously given that the witness was not answering the inquiries as expected and that the prosecutor was taken by surprise. See 56 Ohio Jurisprudence 2d 710, Witnesses, Section 288.

The questioning routine by the prosecutor consisted of refreshing the witness's recollection and not impeaching her testimony, and there was no prejudicial error committed by the trial court in permitting the questioning.

Assignment of error number five states: ''The trial court erred in failing to direct a verdict on the aggravated burglary charge.''

The record reflects that defendant moved for an acquittal at the close of the state's case and, after the trial court had overruled the motion, the defendant proceeded to present testimony on his behalf.

Since the defendant elected to proceed with the trial and to offer evidence on his own behalf, any error which might have occurred in the overruling of the motion for acquittal was waived. *State* v. *Cantu* (1971), 27 Ohio App. 2d 55; *State* v. *Young* (1966), 7 Ohio App. 2d 194; 4 Ohio Jurisprudence 2d 439, Appellate Review, Section 1096.

Assignment of error number six states: "The trial court erred in refusing to allow defendant's attorney to cross-examine as to a possible deal made between police and Kathleen McKewen, as to prosecution of the latter, and in failing to charge the jury as to convicting on uncorroborated testimony of an accomplice."

This assignment is grounded upon the proposition that Miss McKewen was an accomplice in the burglary.

Defendant relies on *Allen* v. *Ohio* (1859), 10 Ohio St. 288, as his authority to cross-examine the witness and the police as to a possible "deal" not to charge the witness in this instance. That case provides, in paragraph six of the syllabus: "It is error for the court to refuse to permit the witness, after his testimony showing his complicity with the defendant in the commission of the crime, to be asked, on cross-examination, whether he did not expect that his own discharge from a further prosecution depended upon the fact of the conviction of the defendant."

An accomplice is one who fully and voluntarily engages with another in the commission of a crime. 15A Ohio Jurisprudence 2d 399, Criminal Practice and Procedure, Section 342.

The witness, Kathleen McKewen, denied being in the apartment of Monnin, stated that she did not want the property brought into her apartment and did nothing to admit complicity in the burglary. There was no evidence otherwise offered which implicated her in the burglary. In the absence of a showing of complicity, the authority cited by the defendant is not applicable to this case.

We find the second portion of this assignment of er-

ror directed to the failure to charge the jury as to convicting defendant on the uncorroborated testimony of an accomplice not to be well taken. Criminal Rule 30 provides, as pertinent, that "[a] party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection."

The record herein reveals no such objection being made.

Assignment of error number seven contends: "The trial court committed various errors as to the evidence, prejudicial to the defendant."

After examining the transcript, we find no basis for this allegation.

Assignment of error eight states: "The conviction of the defendant-appellant of aggravated burglary and theft was against the manifest weight of the evidence."

Other than the status of Kathleen McKewen as an accomplice to the burglary and the degree of the burglary offense of which defendant was convicted, the matters set forth hereunder raise only questions of weight and credibility which we find were properly within the perogative of the jury's determination.

The status of Kathleen McKewen as an accomplice in the crime is not supported by the evidence. See assignment of error six above.

Defendant's assertion that the verdict of aggravated burglary is against the manifest weight of the evidence is well taken.

R. C. 2911.11 defines aggravated burglary as follows:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

"(B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree."

R. C. 2911.12 defines burglary as follows:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony.

"(B) Whoever violates this section is guilty of burglary, a felony of the second degree."

R. C. 2909.01 is referred to in both R. C. 2911.11 and 2911.12 and reads as follows:

"Definitions. As used in sections 2909.01 to 2909.07 of the Revised Code, an 'occupied structure' is any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

"(A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;

"(B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;

"(C) Which at the time is specially adapted for the overnight accomodation of any person, whether or not any person is actually present;

"(D) In which at the time any person is present or likely to be present * * *."

In the committee comment under R. C. 2909.01, it is said: "This section supplies a definition of 'occupied structure' for use not only in connection with the arson offenses, but also for use elsewhere in the new code, e.

g. section 2911.11 and 2911.12 (aggravated burglary and burglary). The definition's general concept is that the actual or likely presence of a person in a structure, regardless of the nature of the structure itself, creates a more serious risk of harm from commission of arson, burglary, and related offenses, and thus warrants more severe treatment of offenders. * * * ''

It becomes evident that the distinction between aggravated burglary and burglary thus turns not on the character of the habitation, but rather upon the existence of one or more of the distinguishing elements set forth in paragraphs (A)(1), (A)(2) and (A)(3) of R. C. 2911.11—*i. e.,* the likely presence *at the time* of persons in the building, the use of weapons, or the threat of physical harm.

It is not disputed that Monnin was not present in his apartment at the time of the burglary.

Defendant contends that neither was there a likelihood of Monnin's being present in the apartment at the time of the alleged offense and thus there was insufficient evidence to support a finding of aggravated burglary. This contention is based on the testimony of Kathleen McKewen who lived across the hall from Monnin and knew that he ordinarily worked during the daytime. She testified additionally as follows:

''Q. On April 17, 1974, you knew he [Monnin] was not home, did you not?

''A. Yes, I knew he was not at home. * * *

"A. They asked me if he was there.

''Q. What did you say?

''A. I said he wasn't.''

Monnin testified that he lived alone in the apartment and usually worked days but also worked occasionally in the evening.

It is not, however, the knowledge of the defendant concerning habitation which is significant, but rather the probability or improbability of actual occupancy which in fact exists *at the time* of the offense, determined by all the facts surrounding that occupancy.

We conclude that where a person individually occupies an apartment and his usual and ordinary work habits take

him away from that apartment regularly during certain hours of the day, *at the time* there is a minimal likelihood that a person will be present therein. Therefore, the finding of aggravated burglary herein is based on insufficient evidence and, for such reason, is against the manifest weight of the evidence.

However, there was adequate evidence to support a finding by the jury of burglary in violation of R. C. 2911.-12, and to show the defendant guilty of such lesser included offense.

Accordingly, we act in accordance with R. C. 2945.79 (D), which reads:

"That the verdict is not sustained by sufficient evidence or is contrary to law; but if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and pass sentence on such verdict or finding as modified, provided that this power extends to any court to which the cause may be taken on appeal * * *."

See *State* v. *Butler* (1967), 11 Ohio St. 2d 23; *State* v. *Creech* (1964), 5 Ohio App. 2d 179; *State* v. *Mathews* (1974), 322 N. E. 2d 289.

It is, therefore, the judgment of this court that that part of the verdict and judgment of the Court of Common Pleas of Hamilton County, finding defendant guilty of aggravated burglary, be modified accordingly, without the granting or ordering of a new trial. It is further ordered that this cause be remanded to the trial court, under the provisions of R. C. 2953.07, with instructions to carry this order of modification into effect and to impose the sentence as authorized by R. C. 2911.12 and 2929.11, for a conviction of burglary.

*Judgment accordingly.*

COLE, P. J., and GUERNSEY, J., concur.

COLE, P. J., and MILLER and GUERNSEY, JJ, of the Third Appellate District, sitting by designation in the First Appellate District.