The STATE of Ohio, Appellee,

v.

JENKINS, Appellant.

[Cite as *State v. Jenkins* (1991), 75 Ohio App.3d 63.]

Court of Appeals of Ohio,
Highland County.

No. 750.

Decided July 23, 1991.

*Fred J. Beery,* for appellee.
*John C. Bryan,* for appellant.

---

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction and sentence of Russell E. Jenkins, defendant below and appellant herein, entered upon a jury verdict

finding appellant guilty of the offense of operating a motor vehicle while having a concentration of ten-hundredths of one gram, or more, by weight of alcohol per two hundred ten liters of his breath in violation of R.C. 4511.-19(A)(3).[1]  The following errors are assigned:

"Assignment of Error No I:

"The trial court erred as a matter of law in overruling defendant-appellant's motion to dismiss pursuant to Criminal Rule 29 at the conclusion of the state's case-in-chief.  Criminal Rule 29 provides that upon motion of the defendant, after the evidence of either side is closed, the court shall order entry of judgment of acquittal if the evidence is insufficient to sustain a conviction of such offense.

"Assignment of Error No. II:

"The trial court erred in rendering final judgment against the defendant, the same being against the manifest weight of the evidence and contrary to law."

The record reveals the following facts pertinent to this appeal.  At the commencement of trial, it was stipulated that appellant had been given an alcohol-breath test, that the appellant tested .36, and that the test was, in all respects, valid and properly administered in accordance with law.

The state called as a witness Orville Peabody, Jr., a Park Ranger for the state of Ohio.  The witness testified that on September 2, 1989, at about 1:00 a.m., he observed a Chrysler automobile heading west on Route 50 in Paint Township and that he followed the vehicle for a few minutes and observed it drop off the berm and cross over the center line.  He stated that he could not distinguish the driver of the car and that there appeared to be three people in the vehicle.  The vehicle turned off on Route 753, pulled off the berm, and stopped.

The ranger also turned onto Route 753 and drove past the stopped vehicle and backed into a lane about an eighth of a mile away.  After a couple of minutes, he came south on Route 753 and went around the block to pull in behind the vehicle and parked on Route 50 where he could observe the vehicle.

---

1.  The case was tried below as an R.C. 4511.19(A)(3) offense even though the Uniform Traffic Ticket complaint charged only a general R.C. 4511.19 offense without specification of the appropriate subsection.  Courts should require the complaint to set forth the specific subsection(s) being charged.  This is not only for the purpose of informing the accused of the specific offense but also for the purpose of setting the parameters of admissible evidence.  For example, it was held in *State v. Boyd* (1985), 18 Ohio St.3d 30, 31, 18 OBR 68, 69, 479 N.E.2d 850, 851, that in an R.C. 4511.19(A)(3) prosecution evidence of the defendant's appearance, manner of speech and walking, and lack of any symptoms of intoxication are not relevant admissible evidence.

The windows of the Chrysler were foggy but he did observe the dome light come on and go off although he did not observe anyone exit the vehicle.

Highland County Deputy Sheriff Wib Davis arrived and the ranger accompanied Davis as he approached the Chrysler. Appellant was sitting behind the wheel with Nancy Knisley sitting in the front passenger seat. Two others, Sue Montgomery and Robert Jenkins, were lying down as passengers in the rear seat.

As Davis approached the vehicle, appellant stated that he was having vehicle problems. The keys were lying on the seat between appellant and Knisley. The deputy took the keys and started the vehicle. After appellant failed the field sobriety test, he denied driving the vehicle and, subsequently, Knisley stated she was driving and, after stopping, she and appellant changed seats because she did not have a driver's license.

The state then rested. Appellant made a Crim.R. 29(A) motion for acquittal which the court overruled. Appellant then presented the testimony of Knisley and Montgomery who both stated that Knisley was driving and changed seats with appellant prior to the arrival of the deputy sheriff. Appellant then renewed his Crim.R. 29(A) motion for acquittal. '

Without articulating whether the evidence was insufficient on the issue of whether appellant had been actually driving when the Chrysler was first observed, the court applied the holding in *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574, and, in effect, extended *Cleary* by concluding that it "seems to come up with a rule that operation is almost equal to capability to operate" and, even though the keys were not in the ignition, appellant had access to them and could be found guilty of operating a vehicle on those grounds. On that basis, the court overruled the motion to acquit.

Subsequently, while instructing the jury, the court included the following:

"I'm going to define for you what is meant by operated, or operating a motor vehicle. The term 'operate' is broader than the act of driving. It includes not only a person being in control of a vehicle while the vehicle is in motion, but also a person, whether conscious or unconscious, in the driver's location, in the front seat of a stationary vehicle, so as to be capable of doing any act, or a succession of acts, which could cause or contribute to the vehicle being put in motion.

"It is not necessary to prove the person in the driver's location of a stationary vehicle intended to set the vehicle in motion."

The record reveals that after the jury began deliberations, they returned to the courtroom where the following incident occurred:

"THE COURT: Ladies and gentlemen of the jury, I have the questions that were written out by the Foreman, and I'm going to address the questions as I feel is proper. The first question is regarding the offense itself, and I will instruct you that the offense for which the Defendant's name's [*sic*] charged here, is for operating a motor vehicle within the State of Ohio, having a concentration of ten hundredths of one gram or more by weight of alcohol per 210 liters of his breath. So it is operating is what we're talking about.

"Now, the second part of this question is to define operation. Now I have already defined that for you. I will read the definition of operation again, however, it is not to be taken as being any more important than any other instruction. In other words, I don't want to emphasize one portion of the instruction over the other, but in answer to your question, I am going to read again the definition of operation.

"The term 'operate' is broader than the act of driving. It includes not only a person being in control of a vehicle, while the vehicle is in motion, but also a person whether conscious, or unconscious, in the driver's location, in the front seat of a stationary vehicle so as to be capable of doing any act or succession of acts which could cause or contribute to the vehicle being put in motion. It is not necessary to prove the person in the driver's location of a stationary vehicle intended to set the vehicle in motion.

"That's the definition of operation. Now, in regard to the verdict forms, at the time I went over the verdict forms, I told you that I believe that each verdict form says 'driving while under the influence of alcohol,' or something to that effect. I don't have them with me. And I told you at the time that the word driving was a misnomer, that the correct word is 'operating.' You can change that in ink if you so desire. That particular phraseology is of no importance. The importance of the verdict forms is that you identify the charge and sign the proper verdict form as to whether the Defendant is Guilty or Not Guilty under the evidence and the Court's instructions."

The verdict forms of guilty and not guilty presented to the jury read, *inter alia,* as follows:

"*Offense:* R.C. 4511.19—Driving while under the influence of alcohol"

The jury then returned a guilty verdict but crossed through the word "driving" and inserted in handwriting the word "operating." From a subsequent judgment on that verdict, this appeal follows.

■ We shall jointly consider both assignments of error. Appellant first contends that error occurred in the overruling of his Crim.R. 29(A) motion made at the end of the state's case. Arguably, by thereafter presenting evidence, however, any error was waived since trial was to a jury. *State v.*

*Collins* (1977), 60 Ohio App.2d 116, 14 O.O.3d 94, 396 N.E.2d 221; *State v. Williams* (1954), 98 Ohio App. 513, 58 O.O. 58, 130 N.E.2d 395; cf. *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781. See, however, *State v. Parks* (1990), 56 Ohio App.3d 8, 564 N.E.2d 747. In addition, while not set forth in a formal assignment, error is asserted in the brief in overruling appellant's Crim.R. 29(A) motion made at the conclusion of his evidence. We elect to review the Crim.R. 29 motions at the end of the state's case and at the close of all the evidence.

▮ It is fundamental that an element of an offense may be proven by circumstantial as well as by direct evidence. *State v. Durr* (1991), 58 Ohio St.3d 86, 92, 568 N.E.2d 674, 681; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 27, 514 N.E.2d 394, 402. A review of the circumstantial evidence leads us to conclude that reasonable minds could reach different conclusions as to whether appellant was operating the vehicle at the times it was observed by the ranger and that the case was properly submitted to the jury.

The evidence before the court at the conclusion of the state's evidence was as follows: (1) that, except for a two-minute period when the park ranger was circling the block, the vehicle was under constant observation and no exchange of drivers was observed. (2) that when the officer approached the vehicle, appellant was seated in the driver's seat with the keys lying between him and a passenger; (3) that appellant initially advised the officer he was having "vehicle trouble"; and (4) that only after failing field sobriety tests did he claim he had not been driving. Additionally, at the close of all the evidence it appeared that the person purported by the appellant's evidence to be driving had no driver's license and that it was unlikely that appellant would entrust the car which was not owned by him but under his control to a third person. These facts, and the reasonable inferences which can be drawn from them, though not conclusive of guilt, were sufficient to withstand the Crim.R. 29(A) motions for acquittal upon the issue of whether appellant was driving the vehicle when first observed.

As noted earlier, the trial court, without deciding the sufficiency of the evidence upon whether appellant had been driving prior to the stop, overruled the motions to acquit upon the basis that under *Cleary, supra,* the "operating" proscription in R.C. 4511.19 extends to a further ability to operate a vehicle. Under that definition, if correct, submission to the jury on that basis was also required since it was undisputed that appellant was seated behind the wheel, had the ignition keys on the seat next to him and had alcohol on his breath in excess of the limit in R.C. 4511.19(A)(3).

Ordinarily, in a criminal case, the mental processes of the jury returning a guilty verdict are not discernible. This case is novel to the extent that it is

reasonably inferable based upon their alteration of the verdict form, that the jury, pursuant to the jury instructions, found the evidence insufficient to prove beyond a reasonable doubt that appellant had driven the vehicle when first observed. Nevertheless, a guilty verdict was returned based upon the broad "operation" instruction given by the court.

██ In that no objection was made to the jury instructions, any error therein would be a ground for reversal only if it was plain error. See Crim.R. 52(B). The provisions of Crim.R. 30(A) state, *inter alia*, as follows:

"A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Such waiver is subject to the plain error rule of Crim.R. 52(B). *State v. Lockett* (1976), 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d 1062, paragraph five of the syllabus. In the seminal case of *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, syllabus, the court held as follows:

"1. Ordinarily, the failure to timely object to a jury instruction violative of R.C. 2901.05(A) constitutes a waiver of any claim of error relative thereto. Crim.R. 30.

"2. A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.

"3. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

We are not persuaded that even if a narrower definition of "operation" had been given to the jury, the outcome of the trial would clearly have been different so as to invoke the plain error doctrine. We further note, without deciding a question which was not raised or briefed below or here, that it is open to question whether the instruction was in any event erroneous. The jury instruction was taken from 4 Ohio Jury Instructions, Section 529.19(A)(1), which appears to have been drafted from the rationale of the holding in *Cleary, supra,* 22 Ohio St.3d at 199, 22 OBR at 352, 490 N.E.2d at 575, wherein the court stated the following with respect to R.C. 4511.19:

"R.C. 4511.19 provides in part:

" '(A) No person shall operate any vehicle, streetcar, or trackless trolley within the state if any of the following apply:

" '(1) The person is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse * * *.'

"While this section deals with the prohibition against driving while under the influence and much of the literature and discussion on the subject refer to 'driving,' that word and 'operating' are not synonymous. This statute has been reviewed and amended over the years and the General Assembly continues to adhere to the word 'operate.' Therefore, the prohibition contained in the statute is against 'operating' a vehicle while under the influence, not merely 'driving' it. The term 'operating' encompasses a broader category of activities involving motor vehicles than does 'driving.' Many jurisdictions have found that a person may operate a vehicle even though the vehicle is not moving. Operation of a motor vehicle within contemplation of the statute is a broader term than mere driving and *a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.-19(A)(1).*" (Emphasis added.)

In *Cleary,* the defendant was found passed out in the driver's seat with the engine running. The syllabus in *Cleary* reads as follows:

"1. Operation of a motor vehicle within the contemplation of R.C. 4511.-19(A) is a broader term than driving and a person in the driver's position in the front seat of the vehicle with the key in the ignition while under the influence of alcohol or any drug of abuse can be found in violation of the statute.

"2. Entering a motor vehicle, putting the key in the ignition and starting and engaging the engine in a stationary position are sufficient acts to constitute operation within the meaning of R.C. 4511.19(A)(1)."

The syllabus appears to have been drafted in accordance with S.Ct.R.Rep. Op. 1(B), which provides that "[t]he syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the court for adjudication."

It does not appear that the Ohio Supreme Court has expressly held that R.C. 4511.19 is violated where the intoxicated driver is behind the wheel and has possession of the ignition key but it is not in the ignition. The Ohio Supreme held in *Cincinnati v. Kelly* (1976), 47 Ohio St.2d 94, 1 O.O.3d 56, 351 N.E.2d 85, syllabus, that "[t]o be in actual physical control of an automobile, under the provisions of Section 506-1 of the Cincinnati Municipal Code, a person must be in the driver's seat of the vehicle, behind the steering wheel, *in possession of the ignition key,* and be in such condition that he is

physically capable of starting the engine and causing the vehicle to move." (Emphasis added.)

In Painter & Looker, Ohio Driving Under the Influence Law (2 Ed.1990), it is urged that a distinction should be drawn between a person who is actually engaging the vehicle's mechanical and electrical agencies as opposed to a person who has the key in his possession and is potentially capable of actively driving the vehicle. While admittedly a line must be drawn someplace, given the evils against which R.C. 4511.19 is directed, it would appear that the danger is as great to the public if the accused has possession of the key but has not placed it in the ignition.

Concluding that the Crim.R. 29 motions were properly overruled and that there was substantial evidence for a jury to reasonably conclude that all of the elements were proven beyond a reasonable doubt, see *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus, both assignments of error are overruled and the judgment affirmed.

*Judgment affirmed.*

HARSHA, J., concurs separately.

GREY, J., dissents.

HARSHA, Judge, concurring.

I concur in the judgment overruling appellant's assignments of error and affirming appellant's drunk driving conviction, but would add the following. The principal opinion states that appellant arguably waived any error in the overruling of his Crim.R. 29(A) motion at the close of the state's case in a jury trial by proceeding to introduce evidence on his behalf, although appellant renewed the motion at the close of all the evidence, citing, *inter alia, Collins, supra,* in support of such conclusion. I respectfully disagree.

In *State v. Thomas* (Apr. 17, 1990), Highland App. No. 719, unreported, 1990 WL 54913, a different panel of this court noted as follows:

"Where a defendant, after moving for a directed verdict at the conclusion of the state's case, offers evidence on his own behalf, any error which might have occurred in overruling the motion is waived. *State v. Whitmeyer* (1984), 20 Ohio App.3d 279, 282 [20 OBR 370, 373, 485 N.E.2d 1055, 1058]; *State v. Collins* (1977), 60 Ohio App.2d 116 [14 O.O.3d 94, 396 N.E.2d 221]; *State v. Durham* (1976), 49 Ohio App.2d 231 [3 O.O.3d 280, 360 N.E.2d 743]. In the case at bar, appellant proceeded to offer evidence on his own behalf following the trial court's overruling of his motion for judgment of acquittal at the close of appellee's case and failed to renew such motion at the close of all the evidence. See, e.g., *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio

St.3d 71 [529 N.E.2d 464], paragraph one of the syllabus, which arguably, by implication, overruled *Whitmeyer, Collins* and *Durham* where a previously entered motion for acquittal is renewed." *Thomas, supra,* at 5.

Both *Helmick* and *Thomas* involved jury trials. In *Parks,* as cited in the principal opinion, the Second District Court of Appeals held as follows:

"In *Helmick,* it was held that a civil defendant does not waive his right to a directed verdict, at the close of the plaintiff's evidence, by proceeding with the defendant's own evidence, so long as the defendant renews his motion for a directed verdict at the close of his own evidence. Because the authority upon which *State v. Parks, supra,* expressly relied has been overruled, and *because we can see no reason not to accord a criminal defendant the same right that is extended to a civil defendant to present evidence in his own defense without waiving his right to judgment in his favor, based upon a motion made at the close of his adversary's evidence,* we hereby overrule *State v. Parks, supra.* A criminal defendant may present evidence in his defense without waiving his right to claim that the trial court erred by denying his motion for a judgment of acquittal made at the close of the state's evidence." (Emphasis added.) *Parks, supra,* 56 Ohio App.3d at 10, 564 N.E.2d at 749.

Although *Parks* involved a bench trial and could have alternatively relied on *Rogers, supra,* to preclude waiver, it is apparent that the Second District Court of Appeals found no logical reason not to extend *Helmick* to *all* criminal cases, especially when considering that *Helmick* involved a civil motion for a directed verdict in the context of a *jury trial.* Since appellant renewed his Crim.R. 29(A) motion at the close of all the evidence, he did not waive the assertion of any error regarding the overruling of his original Crim.R. 29(A) motion by proceeding to present evidence. *Thomas, supra.*

Additionally, I would note that I am not entirely persuaded that the trial court acted properly in extending the *Cleary* ruling to cover situations where the key is not in the ignition. In other words, such conduct may already be adequately proscribed by municipal ordinances regarding the offenses of "actual physical control." *Kelly, supra.* Nevertheless, since the trial court's jury instruction was never objected to by appellant below and is not the subject of one of his assignments of error on appeal, the issue is not before us. Consequently, I concur in the judgment of affirmance.

GREY, Judge, dissenting.

I respectfully dissent on the authority of *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897.