JOURNAL ENTRY AND OPINION
Appellant Henry Hernandez appeals from the May 29, 1998 judgment of conviction entered by Judge Nancy Margaret Russo after a jury found him guilty of Count 1, violation of R.C. 2529.11, possession of cocaine in an amount exceeding 1,000 grams, and Count 2, violation of R.C. 2923.01/2925.11, conspiracy to possess cocaine in an amount exceeding 1,000 grams. The jury also found Hernandez guilty of both the major drug offender and juvenile specifications charged on each count. Hernandez claims twelve assignments of error, the most dispositive being error in jury instructions, and sufficiency and weight of the evidence supporting the juvenile specification.[1] For the reasons that follow, we reverse and remand this matter for further proceedings but, for reasons other than those asserted by Hernandez, we vacate the judgment of conviction on the juvenile specifications.
On February 8, 1998, Hernandez, Carlos Kincaid, and Angel Torres, Hernandez' brother-in-law, traveled by train to New York City. Torres said that Hernandez had promised him $1,000 to help him pick up some "dope," i.e., cocaine. Upon their arrival, they went to the Bronx apartment of a man named David Reyes. Torres and Hernandez watched Reyes and Reyes' cousin prepare six baggies of cocaine in the kitchen and place them in the duffel bags of Torres and Kincaid. Hernandez then left, telling Torres and Kincaid, "I'll see you when we get home." Torres and Carlos later returned to the station, boarded the train, and went to different coach class compartments. Torres did not see Hernandez either at the train station or on board the train.
The train arrived at the Amtrak station in Cleveland after 7:30 a.m. on February 10, 1998. Detectives George A. Seroka and Jody Remington of the Cleveland Police Department had watched about 15 people exit the train, including Torres and Kincaid. Torres exited the train behind Kincaid, and both carried duffle bags. They watched Hernandez exit from a first class train car located closer to the front of the train. After walking out of the station, Hernandez stood near Torres and Kincaid and watched as they threw their duffle bags into the trunk of a taxi. As the trunk closed, Remington saw Hernandez walk away from the taxi.
At that same time, Seroka noticed a Ford Explorer driven by Hernandez' girlfriend, Holly Morales, come down the Shoreway ramp and enter the Amtrak station parking lot. Morales was accompanied by three small children. Hernandez walked in the direction of the Explorer and, when it stopped, opened the hatch, placed his bag inside and got into the passenger's seat. After Torres and Kincaid got into the back seat of the taxi the Explorer and the taxi proceeded toward the exit.
The police officers stopped the Explorer and taxi using another vehicle. Seroka, Remington, and Detectives Douglas Dvorak and Terrence Shoulders surrounded both vehicles. Both Dvorak and Shoulders identified themselves as police officers, advised Torres and Kincaid of their rights, and executed search warrants. Dvorak opened the duffle bags and, among articles of clothing, found a large amount of cocaine inside. Sergeant Brian Heffernan arrested Hernandez, but a search of his bag revealed no drugs.
At noon, Detective Charles Escalante and Remington executed a search warrant at Hernandez' apartment at 9823 Memphis Avenue, Brooklyn. They found a spiral notebook containing initials followed by numbers, a pager, miscellaneous papers, and other items. Escalante attributed the notebook and pager to drug trafficking activity.
Hernandez was indicted with four others on Possession of Drugs with Major Drug Offender and Juvenile specifications, Conspiracy to Possess Drugs with the same specifications, and Possession of Criminal Tools. At trial the judge granted a Crim.R. 29 motion on the Criminal Tools charge, and the jury convicted Hernandez of both counts which were merged. He was sentenced to ten years on Counts 1 and 2, merged, and a consecutive sentence of nine years on the Major Drug Offender specification together with fines totaling $40,000.
Hernandez asserts twelve assignments of error.
 VIII. THE COURT'S JURY INSTRUCTIONS INVADED THE PROVINCE OF THE JURY AND DENIED THE APPELLANT A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE OF THE FEDERAL CONSTITUTION.
Hernandez contends the judge gave three improper and prejudicial instructions to the jury: (1) the jury could not consider the clothing of any witness when determining credibility; (2) instructing the jury to determine the Major Drug Specification; and (3) instructing the jury that exhibits 1-B through 5-B were, in fact, cocaine, a schedule two drug in various amounts.
The State counters that the clothing instruction was cautionary and Hernandez waived his right to assert error on any of the three instructions because no objection was made to any before the jury retired.
During trial Eugena Johnson Whitt, scientific examiner for the Cleveland Police Forensic Laboratory, testified she analyzed State's Exhibits 1-B through 5-B, the plastic-wrapped cocaine taken from the duffle bags, and that the packages held a substance which tested positive for the presence of cocaine which totaled more than 1,000 grams in weight. She identified these exhibits as holding the following weights of a substance containing cocaine: 1-B contained 777.26 grams; 2-B contained 803.50 grams; 3-B contained 796.80 grams; 4-B contained 786.20 grams; 5-A contained 808.20 grams; and 5-B contained 499.52 grams.
We note that the judge instructed the jury on Count 1: the State charged that Hernandez "did knowingly obtain, possess, or use a controlled substance, to-wit: cocaine, a Schedule II drug, in an amount exceeding 1,000 grams" in violation of R.C. 2925.11, and on Count 2, that Hernandez did, "with the purpose to commit or to promote or facilitate the commission or possession of drugs, to wit: cocaine, a Schedule II drug, in an amount exceeding 1,000 grams, did with another plan or aid in planning the commission of said felony" in violation of R.C. 2923.01/2925.11. The judge further instructed the jury that these counts each carried both a major drug offender specification and a juvenile specification.
When charging the jury, the judge "must state to it all matters of law necessary for the information of the jury in giving its verdict. The court must also inform the jury that the jury is the exclusive judge of all questions of fact." R.C. 2945.11; seeState v. Braxton (1995), 102 Ohio App.3d 28, 43, 656 N.E.2d 970, appeal not allowed (1995), 73 Ohio St.3d 1425, 652 N.E.2d 794-802. A judgment of conviction may not be reversed because of "misdirection of the jury unless the accused was or may have been prejudiced thereby[.]" R.C. 2945.83(D); Crim.R. 33(E)(4); see, also, Crim.R. 52(A) (an error, defect, irregularity, or variance which does not affect substantial rights is harmless error and shall be disregarded). This court will not review a single, allegedly defective jury instruction in isolation but within the context of the entire charge. State v. Thompson (1998), 127 Ohio App.3d 511,523, 713 N.E.2d 456, appeal not allowed (1998),83 Ohio St.3d 1451, 700 N.E.2d 334.
The failure to object to a jury instruction constitutes a waiver of all but plain error. State v. Underwood (1983), 3 Ohio St.3d 12,444 N.E.2d 1332, syllabus; see Crim.R. 30(A). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The giving of an improper jury instruction does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus;Thompson, 127 Ohio App.3d at 522. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, 53 Ohio St.3d at paragraph three of the syllabus.
A. Instruction on Element of Offense
Hernandez claims that the judge "invaded the province of the jury" by instructing the jury that the state's exhibits were, in fact, cocaine, and that each exhibit weighed a specified amount, thereby relieving the jury of its duty to find that the state proved beyond a reasonable doubt an important element of the crime charged. The state asserts the lack of objection by his lawyer and no plain error.
There is merit in Hernandez' argument. Section 2925.11 of the Ohio Revised Code establishes a sentencing scheme whereby the degree of the offense is determined by the amount of the controlled substance obtained, possessed, or used. Upon the trial of the accused, the trier of fact "shall determine the amount of the controlled substance involved at the time of the offense and, if a guilty verdict is returned, shall return the findings as part of the verdict. * * * [I]t is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is the requisite amount * * * R.C. 2925.03(E) (application required by R.C. 2925.11(G)); see R.C. 2925.75(A).
The subdivision under which Hernandez was charged, tried, and convicted, R.C. 2925.11(C)(4)(f), provides that the possession or use of an amount of cocaine that is not crack cocaine in an amount exceeding 1,000 grams constitutes a felony of the first degree and carries with it a mandatory maximum sentence, in addition to the major drug offender specification. In the instant case, R.C. 2925.11(C)(4)(f) required the state to prove beyond a reasonable doubt four elements, two wit: that Hernandez didknowingly obtain, possess, or use cocaine, a controlled substance, in an amount exceeding 1,000 grams. The judge, however, gave the following instruction:
 Exhibits 1-B, 2-B, 3-B, 4-B, 5-B and 6-B are packages of cocaine, a Schedule II drug. These will not follow you to the jury room. You are instructed that these exhibits have been admitted as evidence in the case.
 You are further instructed that: Exhibit 1-B is a package of cocaine, a Schedule II drug, in the amount of 777.26 grams; Exhibit 2-B is a package of cocaine, a Schedule II drug, in the mount of 803.50 grams; Exhibit 3-B is a package of cocaine, a Schedule II drug, in an amount of 796.80 grams; Exhibit 4-B is a package of cocaine, a Schedule II drug, in the amount of 786.20 grams; Exhibit 5-B is a package of cocaine, a Schedule II drug, in the amount of 499.52 grams.
 Additionally, you are instructed that you may consider these exhibits as evidence during your deliberations.
Absent a stipulation of fact, the jury is the sole arbiter of the facts, the credibility of the witnesses and the weight of the evidence. R.C. 2945.11; see 4 Ohio Jury Instructions (1997) 405.20 § 1. The jury may believe or disbelieve all or any part of the testimony of any witness. OJI 405.20 § 1. It is within the province of the jury to determine what testimony is worthy of belief and what testimony is not worthy of belief. Id.
Although Hernandez did not contest the testimony from Whitt, on the contents and weight of the identified exhibits, the instruction set forth above is contrary to the mandates of R.C.2945.11 because it effectually relieved the state from proving beyond a reasonable doubt two of the four elements of both the possession and conspiracy charges. First, the state did not have to prove that the identified exhibits were cocaine, a controlled substance; and second, it did not have to prove that the amount of the cocaine contained in the identified exhibits exceeded 1000 grams.[2] We, therefore, find the jury was misdirected in a manner which affected a substantial right, i.e., the right to be proven guilty of each element of the offense beyond a reasonable doubt. R.C. 2901.05(A) ("Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution."); State v. Lockhart (1996). 115 Ohio App.3d 370,372, 685 N.E.2d 564 ("The state has the burden of proving every element of the crimes for which a defendant is charged."); see In re Winship (1970), 397 U.S. 358, 364, 90 S.Ct. 1068,26 L.Ed.2d 368 ("the due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").
We are mindful of the judge's concern, as expressed in the transcript, of sending these exhibits into the jury room during deliberations, given the type of evidence involved and the need for security.[3] Therefore, the judge properly advised the members of the jury that the exhibits would not follow it into its deliberations but that they had been admitted into evidence and may be considered as such during the deliberative process.
B. Major Drug Offender Specification, P.C. 2941.1410
Hernandez also points out that the Major Drug Offender (MDO) specification contained in R.C. 2941.1410 requires the judge to determine whether the offender is a major drug offender. In this case, the judge instructed the jury to do so. Hernandez argues that the phrase "major drug offender" is inherently prejudicial, that it put him in a light that lessened the presumption of his innocence, and that the instruction has no basis in the law.
In response, the state again contends his lawyer failed to object to the instruction but further submits that the instruction was required because it assisted the jury in determining a question of fact.
We, again, find merit in Hernandez' argument. The judge read the definition of "major drug offender" as contained in R.C.2929.01(Y) as the jury instruction on the specification:
 "Major drug offender" means an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance that consists of or contains at least one thousand grams of hashish; at least one hundred grams of crack cocaine; at least one thousand grams of cocaine that is not crack cocaine; at least two hundred fifty grams of heroin; at least five thousand unit doses of L.S.D.; or at least one hundred times the amount of any other schedule I or II controlled substance other than marihuana that is necessary to commit a felony of the third degree pursuant to section 2925.03, 2925.04, 2925.05, 2925.06, or 2925.11 of the Revised Code that is based on the possession of, sale of, or offer to sell the controlled substance.
See R.C. 2925.01(DD).
Because Hernandez's lawyer did not object to this, we must review this argument again applying the "plain error" standard. The MDO specification contained in R.C. 2941.1410(B) specifically requires the trial judge to determine the issue of whether an offender is a major drug offender. The reason is apparent; a specification is not an offense while standing alone. It "is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached." State v. Nagel (1999), 84 Ohio St.3d 280,286, 703 N.E.2d 773. The MDO specification does not require any specific finding of fact or element independent of that attendant to the underlying criminal charge. Once the finder of fact has determined the guilt of the offender on the underlying charge, the question of whether the offender is a major drug offender also has been decided, e.g., a "major drug offender" is, as a matter of law, a person who has been convicted of possession of cocaine which is not crack cocaine in an amount. exceeding 1,000 grams. By the nature of the specification, there is no separate element subject to determination by the trier of fact. In essence, the judge instructed the jury to determine a question of law, contrary to R.C. 2945.11.
This instruction is especially disturbing in light of the fact that the judge had also instructed the jury that exhibits 1-B through 5-B contained cocaine in an amount exceeding one thousand grams of cocaine. Because there was no factual question for the jury to decide in determining guilt on the MDO specification, the instruction allowed the jury to surmise that Hernandez deserved the utmost contempt when compared to someone who may have possessed less than 1,000 grams of cocaine. The general assembly not only understood that the MDO specification applied as a matter of law to certain factual determinations and was not a matter for the jury to consider, it also understood the potential for prejudice in allowing the jury to determine the specification. Based upon the foregoing, we find this argument meritorious as the instruction constitutes plain error which affects a substantial right.
C. Witnesses' clothing
Finally, Hernandez claims that the judge erred when instructing the jury not to consider the clothing of a witness when determining credibility because such an instruction has no foundation in law. He claims that the instruction was designed to refer to one of the witnesses, Torres, who wore jail clothes while testifying. The state points out that, again, Hernandez's lawyer did not object and the issue is, therefore, waived.
The judge gave an instruction on a test for credibility which mirrored that reflected at 4 OJI 405.20 § 3. "To determine the credibility of a witness," the judge instructed,
 consider the interest or bias the witness has in the outcome of the verdict; the witness's appearance, manner, and demeanor while testifying before you * * * and any or all other facts and circumstances surrounding the testimony which, in your judgment, would add or detract from the credibility and weight of the witnesses's testimony, except that you may not consider the clothing worn by any witness when determining the credibility of that witness.
By failing to object, the lawyer waived this claim of error,State v. Underwood (1983). 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus; see Crim.R. 30(A), but, even with objection, we would not find error.
Before the state began its direct examination of Torres, Hernandez' lawyer objected to the fact that Torres, as a witness, appeared in jail clothing rather than civilian clothing. When considering this objection in the context of the entire instruction, it is apparent that the judge gave the instruction complained of as a curative instruction since she previously instructed the jury to determine credibility of a witness based, in part, upon "appearance." Absent the curative instruction, Hernandez would have argued prejudice based upon that portion of the instruction telling the jury to determine credibility based upon a witness's appearance.
 XII. THE EVIDENCE OF THE JUVENILE SPECIFICATION WAS INSUFFICIENT AND AGAINST THE WEIGHT OF THE EVIDENCE.
Hernandez complains that the finding of "juvenile specification" was against the weight of the evidence because the state failed to show that he actually possessed any cocaine in the vicinity of a juvenile. Moreover, the state never proved that the taxi containing the cocaine was within 100 feet of a juvenile. The state counters that, at the time of his arrest on the possession charge, Hernandez was in constructive possession of cocaine and inside the same car as a juvenile thereby contending the conviction on that specification must be affirmed.
While we conclude that Hernandez' conviction on the juvenile specification must be vacated, we do so for reasons other than those asserted. As mentioned supra, a specification is not an offense standing alone. A "juvenile specification" ordinarily increases the degree of the crime committed and, accordingly, the attendant penalty.[4] See R.C. 2925.75(A). One exception to that general rule occurs, for instance, where the amount of cocaine, which is not crack cocaine, associated with a trafficking offense exceeds 1000 grams. R.C. 2925.03(C)(4)(g). In that case, the fact that the offense occurred within the vicinity of a juvenile is not relevant to either the degree of the offense or the subsequent penalty. The offense itself constitutes a felony of the first degree but carries with it the possibility of an additional mandatory prison term under R.C. 2929.14(D)(3)(b).Id.
In the present case, the indictment charges Hernandez under R.C. 2925.11(C)(4)(f) for possession of cocaine in an amount exceeding 1,000 grams.[5] Like the trafficking offense discussed above, it does not carry with it a juvenile specification. In fact, R.C. 2925.11 does not contain a juvenile specification as defined in R.C. 2929.01(BB) for any amount of proscribed controlled substance.[6] But see, e.g., R.C. 2924.13 (permitting drug abuse); supra note 3. Because the juvenile specification charged in the indictment is void, the judgment of conviction is hereby vacated. See State v. Saionz (1969), 23 Ohio App.2d 79,84; 261 N.E.2d 135 (an indictment that does not charge an offense is void), citing, in part, State v. Wozniak (1961),172 Ohio St. 517, 178 N.E.2d 800.
Based upon our conclusions regarding the merits of the Assignments of Error VIII and XII, Hernandez' remaining assignments of error are rendered moot and will not be addressed by this court. App.R. 12(A)(1)(c)
We hereby reverse and remand the judgment of conviction on Count 1, possession of cocaine in an amount exceeding 1,000 grams in violation of R.C. 2925.11, and Count 2, conspiracy to possess cocaine in violation of R.C. 2923.01/2925.11. We also reverse and remand the judgment of conviction on the MDO specifications, R.C.2941.1410, on both counts, and we vacate the judgment of conviction on the juvenile specifications on both counts.
It is ordered that the appellant recover from appellee his costs herein taxed.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________________ ANNE L. KILBANE, JUDGE.
 KENNETH A. ROCCO, P.J., CONCURRING SEPARATELY;
 JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY: SEE SPEPARATE OPINION.
[1] See the attached appendix for Hernandez' other assignments of error.
[2] The instruction left little more for the jury to do than simply add together the weight of the exhibits as given by the judge.
[3] In addition, defense counsel expressed his concern because Hernandez' name appeared on the bags.
[4] E.g., R.C. 2925.03(C)(4)(c) (where the amount of cocaine, not crack, involved in the trafficking offense exceeds 10 grams, but does not exceed 100 grams, the offense is a felony of the fourth degree; when the same offense is committed within the vicinity of a juvenile, it is a felony of the third degree); see also R.C. 2925.03(C)(4)(b), (d) (e)
[5] A review of the bill of particulars filed May 7, 1998 shows that the prosecution hoped to prove the juvenile specification contained in R.C. 2925.01(BB). That section defines an offense "committed in the vicinity of a juvenile"; it does not contain a specification.
[6] Therefore, in the context of Hernandez' assignment of error, one can safely say that no amount of evidence will support a juvenile specification under R.C. 2925.11.
 APPENDIX I. THE TRIAL COURT VIOLATED CRIM.R. 12(E) AND THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION WHEN IT FAILED TO CONDUCT A HEARING AND MAKE A RULING ON THE APPELLANT'S MOTION TO SUPPRESS ORAL STATEMENTS BEFORE TRIAL.
 II. CRIMINAL RULE 16 WAS VIOLATED WHEN THE STATE PROVIDED DEFENSE COUNSEL WITH STATEMENTS MADE BY THE APPELLANT AFTER VOIR DIRE WAS COMPLETED.
 III. THE TRIAL COURT IMPROPERLY DENIED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND DENIED HIM DUE PROCESS AND COMPULSORY PROCESS WHEN IT DENIED HIM THE OPPORTUNITY TO PRESENT THE TESTIMONY OF TWO DETECTIVES AT THE MOTION HEARING IN VIOLATION OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.
 IV. THE APPELLANT WAS DENIED DUE PROCESS AND COMPULSORY PROCESS WHEN THE COURT DENIED HIM THE OPPORTUNITY TO SUBPOENA DOCUMENTS AND PRESENT WITNESSES ON HIS BEHALF IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.
 V. THE TRIAL COURT ALLOWED IMPROPER OPINION TESTIMONY CONCERNING THE CONTENTS OF NOTEBOOKS SEIZED FROM APPELLANT'S APARTMENT.
 VI. THE TRIAL COURT IMPROPERLY LIMITED THE SCOPE OF CROSS EXAMINATION IN VIOLATION OF DUE PROCESS AND ESTABLISHED OHIO LAW.
 VII. THE TRIAL COURT ALLOWED HEARSAY AND OTHER TESTIMONY THAT WAS NOT RELEVANT TO THE INDICTMENT AND DENIED THE APPELLANT A FAIR TRIAL.
 IX. THE TRIAL COURT IMPROPERLY SENTENCED THE APPELLANT TO NINE YEARS IMPRISONMENT FOR THE MAJOR DRUG OFFENDER SPECIFICATION AND SUCH SENTENCE MUST BE VACATED.
 X. THE TRIAL COURT'S PRISON SENTENCE IS NOT SUPPORTED BY THE RECORD AND THE TRIAL COURT'S FAILURE TO STATE ITS REASONS RATHER THAN CONCLUSION, MANDATES A REVERSAL PURSUANT TO 2929.11-.14.
 XI. THE COURT'S IMPOSITION OF FINANCIAL SANCTIONS MUST BE VACATED BECAUSE THE COURT FAILED TO CONSIDER THE APPELLANT'S PRESENT AND FUTURE ABILITY TO PAY THE SANCTION UNDER R.C. 2929.19(B)(6).